**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| GEOTAG INC., | |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| GEORGIO ARMANI S.P.A. ET AL., | CIVIL ACTION NO. 2:10-cv-00569-TJW |
| Defendants. | |

**LELY HOLDING S.A.R.L AND LELY INDUSTRIES N.V. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND IN THE ALTERNATIVE MOTION TO TRANSFER VENUE PURSUANT TO §1404**

Defendants LELY HOLDING S.A.R.L. (hereafter "Lely Holding") and LELY INDUSTRIES N.V., (hereafter "Lely Industries") (Lely Holding and Lely Industries jointly referred to as "Lely") move this Court for an order dismissing Lely from the action filed by Plaintiff , GEOTAG, INC. (hereinafter "Geotag") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, Lely moves this Court for an order transferring this action to the Southern District of Iowa, pursuant to 28 U.S.C. §§ 1391(a) and 1404(a) (hereinafter the "Motion").

In support of its Motion, Lely files concurrently herewith the Declaration of Michiel A. Molier, the Declaration of Andreas Maiwald, and a Request for Judicial Notice of facts in support of transfer to the United States District Court for the Southern District of Iowa.

**REQUEST FOR ORAL ARGUMENT**

Lely hereby requests an oral hearing in accordance with Eastern District of Texas Local Rule C-7(g) on its Motion for Lack of Personal Jurisdiction, or alternatively, Motion to Transfer this action to the Southern District of Iowa.

**BACKGROUND**

**A.  Summary of the Case**

A complaint for patent infringement was filed by Geotag on December 17, 2010 alleging infringement by 25 defendants, including the Lely defendants. The patent at issue is United States Patent No. 5,930,474, issued on July 29, 1999 and entitled "Internet Organizer for Accessing Geographically and Topically Based Information" ("the Patent") (Complaint ¶ 29).

According to the Complaint, the Patent generally discloses systems and methods which associate on-line information with geographic areas, comprising a search engine configured to search topics within a selected geographical search area. (*Id.* at ¶31). The Complaint alleges that each of the defendants makes, uses, sells, and/or offers for sale in the United States, systems and methods which are covered by one or more claims of the '474 patent." (*Id.* at ¶32). The Complaint alleges that "[o]n information and belief, LELY has infringed the '474 patent in violation of 35 U.S.C. §271 through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one more claims of the '474 patent."  Specifically, according to the Complaint, "such systems and methods comprise the dealer locator at www.lely.com." (*Id.* at ¶46)

The Complaint alleges that the Defendants "are subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent

courses of conduct, and/or deriving substantial revenue from goods and services provided to persons or entities in Texas." (*Id.* at ¶26)

Neither Lely, nor any other defendants have a place of business in Texas according to the Complaint.

### B.  Geotag

Geotag is a Delaware corporation with a place of business in Plano, Texas. (Complaint ¶ 1).

Geotag filed a document entitled "Amendment No. 2 to Form S-1 Registration Statement" with the Securities and Exchange Commission. (Request for Judicial Notice, at ¶3, Exhibit C) In this form, Geotag states that it's main business is "licensing and enforcement of it's patented technology" and that Geotag plans to generate its revenue "from our ability to negotiate and enforce settlement and licensing arrangements with unauthorized users of our 474 patented technology. Our ability to successfully negotiate license agreements with third-party users of our technology will depend, in large part, on our outside legal team's success in developing, operating and prosecuting our patent infringement and licensing strategy for the 474 Patent. If necessary, we may be required to file patent infringement actions against unauthorized, third-party users of our patented technology." (*Id.*, Exhibit C, p. 6).

### C.  Lely

Lely Holding S.à.r.l. (Lely Holding) is a corporation formed under the laws of Luxembourg. Lely Industries N.V. (Lely Industries) is a corporation formed under the laws of the Netherlands. Lely Holding and Lely Industries both have a principal place of business at Weverskade 110, in Maassluis, the Netherlands. At all relevant times, both Lely Holding and Lely Industries have had a principal place of business outside the United States. (Declaration of Michiel A. Molier, ¶2) Lely Holding and Lely Industries are in the business of manufacturing and selling agricultural and dairy equipment. (Molier decl. ¶3)

Lely Holding and Lely Industries have no office in Texas and no employees there, no manufacturing facilities, no registered agents, no dealers, no property, and no bank accounts in Texas, or in the United States as a whole. The employees of Lely Holding and Lely Industries are mostly located in the Netherlands, with some employees located in Switzerland and several other countries. None of their employees are located in the United States. Lely Holding and Lely Industries transact no business in Texas and make no sales in Texas. (Molier decl. ¶4-5)

Lely Holding is the ultimate parent company of a U.S. subsidiary named Lely USA, Inc. (hereafter "Lely USA"), a Delaware corporation with a principal place of business in Pella, Iowa. (Molier decl. ¶6) Lely USA is a defendant in a separate suit brought by Geotag in the Eastern District of Texas, namely 2:10-cv-00575 filed on December 18, 2010. Lely Holding and Lely Industries employees frequently travel to Pella, Iowa to work together with employees of Lely USA. (Molier decl. ¶6)

### D.  Lely's Web Site

Lely has a web site www.lely.com, which is Lely's only official web site. Lely Industries is listed as the registrant for the domain. However, the duties of maintaining the web site are the responsibility of Lely Holding. (Declaration of Andreas Maiwald, ¶2-3) The web site includes a dealer locator which allows visitors to Lely's web site to search world-wide for dealers who sell Lely's products.[1] Both the web site and dealer locator were programmed in the Netherlands by web site developer 4net ICT Solutions B.V. and are hosted in Switzerland. (Maiwald decl. ¶3-4)

---

[1] The Lely web site included a link (now removed) to another dealer locator provided by Lely USA. This second dealer locator used the findlocation dealer locator application hosted by Xionetic Technologies, Inc. under a contract with Lely USA, and permitted users to search for Lely USA dealers in the United States only. (Maiwald decl. ¶8)

The dealer locator is implemented using the Google Maps API provided free-of-charge by Google, Inc., and was first made available on the Lely web site on or about May 2010.[2] Before the introduction of the Google dealer locator, the web site included a graphical dealer list, which allowed a user to select a country and then an icon from a map of the country to obtain information about a specific dealer. (Maiwald decl. ¶5)

The dealer locator requires a user to first enter a choice of product line (the possible choices being either "Dairy-and Barn Equipment, Feeding" or "Forage Solutions") and then choose a country in which to find a dealer. Once the country is selected, a box appears for entry of a city or postal code by the user, and the Google dealer locator provides an output (both in a listing below the search box as well as an icon appearing on a Google Earth map) indicating the nearest dealers to the entered city or postal code. (Maiwald decl. ¶9)

The Google dealer locator on the web site does not show any dealers in Texas. A search with "Dairy-and Barn Equipment, Feeding" selected for the product line and the United States selected as the country, will return no result if a Texas zip code entered. The dealer locator will return the name and address of a Lely dealer in Iowa, Illinois, Indiana, Michigan, Minnesota, New York, Ohio, Pennsylvania, Vermont, or Wisconsin if a zip code in these states is entered. A search with "Forage Solutions" selected for the product line and the United States selected as the country, and any U.S. zip code entered, will always return the address of Lely USA in Pella, Iowa. (Maiwald decl. ¶7)

---

[2] The Google dealer locator was modified on or about April 1, 2011, so that users accessing the web site from the United States are directed to a list of dealers rather than the Google dealer locator. The description of the Google dealer locator in this motion applies for users accessing the web site prior to April 1 and for users accessing the web site from locations other than the United States. (Maiwald decl. ¶6)

The web site provides information about Lely and its products, and the location of dealers, but does not provide a means for visitors to transact business via the web site. No sales can be made via the web site and there are no order forms on the web site. (Maiwald decl. ¶11; Molier decl. ¶8)

The web site is not specially targeted to Texas in any way. There is no targeted advertising or special mention of Texas anywhere on the www.lely.com web site. There are no products advertised on the web site which are specially adapted for the Texas market, and there are no Texas contact addresses or Texas telephone numbers provided on the web site. (Maiwald decl. ¶10)

## **LEGAL ARGUMENT**

### I.   **THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION BECAUSE LELY LACKS THE REQUISITE MINIMUM CONTACTS WITH TEXAS**

In patent infringement cases, Federal Circuit law governs. *Silent Drive Inc. v. Strong Indus* 326 F.3d 1194 (Fed Cir 2003). "The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident defendant, but it need only make a prima face case if the district court rules without an evidentiary hearing." *Johnston v. Multidata Systems Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *see also Nuance Communications v. Abby Sftwr*, 2010-1100, p.8 (Fed. Cir. 2010). Uncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima face case of personal jurisdiction exists. *Id*.

To meet the requirements of personal jurisdiction over an out-of-state defendant, two factors must be considered: (1) whether a forum state's long-arm statute permits service of process. *Genetic Implant Sys. Inc. v. Core-Vent Corp*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)

(*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) and (2) whether assertion of personal jurisdiction violates due process. *Id.*

The Texas long-arm statute extends to the limits of due process (Tex. Civ. Rem. Code. Ann. 170.042 (West 1997)), so a court only needs to consider whether exercising jurisdiction is consistent with 14th Amendment Due Process. *Gundle Lining Contr. v. Adams County Asphalt*, 85 F.3d 201, 205 (5th Cir. 1996). Due Process permits personal jurisdiction over a non-resident defendant when: (1) the defendant has had minimum contacts with the state and (2) the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewics*, 471 U.S. 462, 474 (1985) (citing *International Shoe Co*., 326 U.S. at 3160); *Nuance Communications v. Abbyy Software*, 2009 U.S. Dist. LEXIS 75583, at *15 (Fed. Cir. 2010) (citing same); *Johnston v. Multidata Systems International Corp.*, 523 F.3d 602 (5th Cir. 2008).

In this case Lely does not have the requisite minimum contacts with the state of Texas.[3]

Minimum contacts can arise from in the context of general or specific jurisdiction. *Johnston v. Multidata Systems Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008) (citing *Helicopteros Nacionales de Colombia S.A.*, 466 U.S. 408, 414-419 (1984)); *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

---

[3] Lely's contacts with the United States as a whole appear to be insufficient to establish personal jurisdiction over Lely Holding or Lely Industries. The small amount of contact Lely has with the United States occurs almost exclusively in Iowa, where Lely USA is located. If Lely Holding's and Lely Industries' contacts with the United States as a whole are sufficient to satisfy the demands of due process, then Lely Holding's and Lely Industries' contacts with Iowa will also be sufficient and they will be subject to personal jurisdiction in Iowa. However, these contacts cannot subject Lely Holding and Lely Industries to personal jurisdiction in Texas.

**1. Lely does not have continuous nor systematic contacts with Texas sufficient for general personal jurisdiction**

Under a general jurisdiction analysis, a defendant's contacts with the forum state that are unrelated to the cause of action must be both continuous and systematic. *Helicoteros Nacionales de Colombia S.A. v. Hall* 466 U.S. 408, 414 (1984).

Lely's contacts with Texas are neither continuous nor systematic. Lely does not have an office in Texas and has no employees there. Lely does no business in Texas and makes no sales in Texas. Lely has no bank account, no property, no registered agent, and no dealers in Texas. In short, Lely has no business presence in Texas and does no business there. (Molier decl. ¶4-5)

Lely maintains a web site which, like most web sites, is accessible from locations world-wide, including Texas. The web site is passive, providing information about Lely, its products, and its dealers, but does not provide a means for visitors to transact business via the web site. No sales can be made via the web site and there are no order forms on the web site. (Maiwald decl. ¶11; Molier decl. ¶8) Merely maintaining a web site accessible in the forum is *not* sufficient to give rise to general jurisdiction. *See, e.g.*, *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

**2. Lely has not purposefully directed its activities at Texas residents to permit specific personal jurisdiction**

Under a specific jurisdiction analysis, a defendant's contacts with the forum must arise from or be directly related to the cause of action. *Nuance Communications v. Abbyy Software*, 2009 U.S. Dist. LEXIS 75583, at *15 (Fed. Cir. 2010) (citing *Akro v. Luker*, 45 F3d 1541, 1543 (Fed Cir 1995)). The Federal Circuit has interpreted this to require: (1) the defendant purposefully directed activities at residents of the forum, and (2) the claim arises out of or relates to those activities. *Id.*

> ### i.   *Lely has not purposefully directed activities at residents of Texas*

As noted above, Lely does no business in Texas. The *only* continuous contact Lely has with Texas is the Lely web site which can be accessed from Texas.

Lely's web site is not purposefully directed to Texas residents. There is no targeted advertising or special mention of Texas anywhere on the web site. There are no products advertised which are specially adapted for the Texas market. There are no Texas contact addresses or Texas telephone numbers provided on the web site. The Google dealer locator on the web site does not identify any dealers in Texas. (Maiwald decl. ¶10-11)

Lely's web site is a "passive" web site which provides information about the company and its products, and the location of dealers, but does not provide a means for visitors to transact business via the web site. No sales can be made via the web site and there are no order forms on the web site. The Federal Circuit has held that in such instances, personal jurisdiction is improper. In *Trintec*, the defendant operated a web site which did include interactive features aimed at transacting business, but **the Federal Circuit suggested that even this may not be enough without proof that residents from the forum <u>actually used the web site to transact business.</u>** *Trintec,* 395 F.3d at 1281 ("it is unclear how frequently those features are utilized, or indeed, whether any District residents have ever actually used [defendant's] web site to transact business." ) (emphasis added). In this case, Lely does not transact any business over their web site. The web site is passive and merely provides information about the company, its products, and where to find a dealer. None of these functions rises to the level of transacting business.

The Complaint alleges that Lely infringes Geotag's patent as a result of the dealer locator on its web site. The Google dealer locator is designed to identify dealers world-wide. It has no features directed to Texas or residents of Texas. If a Texas zip code is entered into

the dealer locator it will either direct the user to its dealer in Pella, Iowa (if "Forage Solutions" is selected) or will produce no results at all (if "Dairy-and Barn Equipment, Feeding" is selected). Moreover there is no evidence that anyone in Texas has ever used the Google dealer locator, which was only accessible to U.S. residents for 11 months, from May 2010 until end of March 2011. (Maiwald decl. ¶5-7)

These circumstances differentiate the present case from *Coolsavings.com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000 (N.D. Ill. 1999), which involved infringement allegations relating to the web site itself. The plaintiff in *Coolsavings* alleged infringement of a patent for a data processing system for issuing electronic certificates (advertisements and coupons) over interactive online networks. *Id*. at 1001. The court found that the defendant's interactive coupon program on its web site was directed at the entire United States and was actually used by residents of the forum state. *Id*. at 1001, 1003. The defendant also selected a marketing firm based in the forum state to promote its allegedly infringing coupon service, the marketing firm promoted the service to clients in the forum, and the defendant travelled to the forum several times to promote its service. *Id*. at 1003-04. These facts lead the court to the conclusion that the defendant purposefully directed its activities at residents of the forum and plaintiff's claims arose out of or related to those activities. *Id*. at 1004.

Citing the defendant's marketing activities, the court in *Coolsavings* particularly noted that these were purposeful contacts, and "not the 'unilateral activity of another party or third person' that the Supreme Court warned us against attributing to a defendant for jurisdiction purposes." *Id*. at 1003 (quoting *Burger King, 471 U.S. at 475* & n.17 and also citing *Red Wing Shoe Co.*, 148 F.3d 1355, 1361 (Fed Cir. 1998)).

In the present case, there is no evidence that Texas residents have used the Google dealer locator and Lely has not undertaken any marketing activity directed to Texas. Lely has

made no purposeful contacts with Texas. Any contact by Texas residents with Lely, by use of the Google dealer locator or through the web site or otherwise, if any, would be the result of the "unilateral activity of another party or third person" that the Supreme Court cautioned against attributing to a defendant for jurisdiction purposes.

In summary, Lely has not purposefully directed its web site, the Google dealer locators, or any of its activities at residents of Texas. Thus, the first prong of the *Nuance Communications* test is not satisfied, and there can be no specific jurisdiction in this case.

> **ii.      *There is no evidence of any activity in Texas that could constitute infringement of Geotag's patent***

The second prong of the *Nuance Communications* test requires that the plaintiff's claim arises out of or relates to the activities of the defendant in the forum. The Complaint vaguely alleges that Lely has infringed the patent "through actions comprising the making, using, selling and/or offering for sale in the United States systems and methods which comprise associating on-line information with geographic areas and which are covered by one more claims of the '474 patent" and "such systems and methods comprise the dealer locator at www.lely.com." (*Id.* at ¶46)

Lely is in the business of manufacturing and selling agricultural and dairy machinery. Lely does not and has never sold, offered for sale, or imported the dealer locator on its web site. (Molier decl. ¶3,7) The Lely web site, including the Google dealer locator, was programmed in the Netherlands by web site developer 4net ICT Solutions B.V. and is hosted in Switzerland. (Maiwald decl. ¶3) Thus, the dealer locator could not have been "made" in the United States. Lastly, there is no evidence that the Google dealer locator has ever been used in Texas.

Lely has no offices, employees, agents or dealers in Texas, and thus Lely cannot itself use the dealer locator in Texas. While Lely has a web site with a worldwide dealer locator that was accessible in Texas, there is no evidence that anyone in Texas has ever accessed the dealer locator on Lely's web site. "Personal jurisdiction surely cannot be based solely on the ability of [forum] residents to access the defendants' web sites, for this does not by itself show any persistent course of conduct by the defendants in the [forum]." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000). If access to web sites was the threshold, then "personal jurisdiction in Internet-related cases would almost always be found in any forum in the country" which is contrary to long-standing principles of federal court jurisdiction. *Id.*

## II.   ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF IOWA PURSUANT TO 28 U.S.C.§1404(a).

In the alternative, if the Court does not dismiss this case for lack of personal jurisdiction, it should transfer the case to the Southern District of Iowa in Des Moines, Iowa. The Court has the authority to grant Lely's motion to transfer this action to Iowa pursuant to 28 U.S.C. §1404(a). Under §1404(a), a district court may transfer any civil action to any other district or division where it might have been brought.

The Federal Circuit has made clear that a motion to transfer venue should be granted if the proposed venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of AM., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*). While venue statutes generally give plaintiff the choice, this leniency can be used not just to seek justice, but also in part for harassment. *Id.* at 313.

In order to protect defendants, the Fifth Circuit has adopted a balancing test between private and public factors to determine when transfer of venue is appropriate. *In re*

*Volkswagen of Am., Inc.,* 545 F.3d at 315. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive." 551 F.3d at 1319. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." *Id.*

In analyzing these factors, no one factor is dispositive. Moreover, the plaintiff's choice of venue cannot be considered as a distinct factor. Id. at 1320. In fact, the choice of venue by the plaintiff is not even entitled deference. *In re Zimmer Holdings, Inc.*, 609 F.3d. 1378, 1382 (Fed. Cir. 2010). In fact, it is entitled close scrutiny. *Id.*

### 1.   **This Action could have been brought in the Southern District of Iowa**

If the allegations in Geotag's complaint are taken as true, then all defendants in this proceeding have web sites that infringe Geotag's patent and are publicly accessible in any venue in the U.S. If the Court finds a basis for personal jurisdiction on accessibility to a web site alone, then Lely and all the other defendants could have been sued in the Southern District of Iowa.

### 2.   **The Private Factors Establish Southern District of Iowa as the More Convenient Venue.**

#### a.   *Relative ease of access to sources of proof*

In patent cases, particularly where the plaintiff does not practice it's own patents, the vast majority of evidence comes from the accused infringer, and where the majority of

evidence rests may result in favor of transfer to that location. *In re Genentech Inc.,* 566 F.3d 1345 (Fed. Cir. 2009).

Lely Holding and Lely Industries are foreign entities, but Lely Holding has a subsidiary in Pella, Iowa (Lely USA). The great majority, if not all, of Lely Holding's contacts in the United States are in Pella, Iowa. To the extent than any documents relating to the dealer locator (such as, for example, information regarding Lely's dealers in the United States) would be located in the U.S., they would likely be in Pella, Iowa.

To the extent that information regarding use of the dealer locator is not with Lely, it would be with the provider of the dealer locator, in this case Google, Inc. Google has a principal place of business in Mountain View, California, which is also not located in or near the Eastern District of Texas. (Request for Judicial Notice, at ¶7).

Thus, this factor favors transfer.

b.   *The availability of compulsory process to secure witnesses*

Lely Holding and Lely Industries are both based in the Netherlands, the Lely web site was created in the Netherlands, and is hosted in Switzerland. Lely USA, which is not a party to the suit, provides information for the Lely web site regarding Lely's activities in the United States, and Lely USA is based on Pella, Iowa. As a result, many of the likely witnesses are located in the Netherlands, in Switzerland, and in Pella, Iowa.

Pella, Iowa is located approximately 50 miles from Des Moines, in Marion County in the Southern District of Iowa. (Request for Judicial Notice, at ¶6,8). The witnesses in Pella are within the subpoena power of the district court for the Southern District of Iowa, but this Court has no power to compel these witnesses to appear live in Texas.

Thus, this factor favors transfer.

### c. *The cost of attendance for willing witnesses*

Many of the likely witnesses are located in Europe. The cost and inconvenience for these witnesses to travel to Marshall, Texas, or to Des Moines, Iowa, is not significantly different. (Request for Judicial Notice, at ¶4-6). However, it is more likely that witnesses travelling to Iowa could combine travel for the litigation with attending to other matters at Lely USA's facilities in Pella, Iowa. Pella is only a little over an hour's drive from Des Moines, which where a division of the Southern District of Iowa is located, and this is also where the nearest airport is located. (Request for Judicial Notice, at ¶6, 8)

Thus, this factor weighs slightly in favor of transfer.

### d. *Other practical problems that make a trial easy, expeditions and inexpensive*

Transfer does not burden the Court or the other defendants in any way. This case is still in a very early stage where no hearings, scheduling conferences, evidentiary proceedings like depositions, or any other substantive action has been taken in the case. In fact, not all defendants have even responded to the Complaint. Thus, this factor is neutral.

### 3. **The Public Interest Factors Show that the Southern District of Iowa is More Convenient than the Easter District of Texas**

### a. *Administrative difficulties flowing from court congestion*

The average time from filing to trial in civil cases in the Eastern District of Texas is 21.7 months, and in the Southern District of Iowa is 20.6 months. In the Eastern District of Texas, for jury trials, the average is 24.2 months and for non jury trials the average is 15.8 months. For the Southern District of Iowa, this breakdown is not reported. (Request for Judicial Notice, at ¶2). These statistics do not take into account that this case and the other cases recently filed by Geotag involve hundreds of defendants, which will likely create

congestion and result in longer time to trial for this case. In sum, this factor weighs in favor of transfer.

> b.   *The local interest in having localized interests decided at home*

This factor is neutral at best. The Geotag patent has changed ownership five times since it was granted. (Request for Judicial Notice at ¶1, Exhibit A). Geotag only became the owner of the Patent on July 22, 2010. (*Id.*) Since that time Geotag has filed suit against over 300 defendants in the Eastern District of Texas. Geotag does not have any connection with the Eastern District of Texas other than these suits. Whatever presence Geotag has in the Eastern District is perpetuated for the sole purpose of litigation. "A plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within … prohibited activities." *In re Hoffmann-LaRoche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009).

Geotag is incorporated in Delaware, has a principal place of business in Plano Texas, and its business activities in the Eastern District of Texas consist of filing suit against hundreds of defendants for alleged patent infringement. In its recent Form S-1 filed with the SEC, Geotag indicated that it's primary business was to license and enforce it's patented technology. (Request for Judicial Notice, at ¶3).

The residents of the Eastern District of Texas have little or no interest in Geotag's pursuit of its litigation business in their district. This factor is thus neutral.

> c. *The Familiarity Of The Forum With Governing Law*

Both forums are Federal District courts and accustomed to dealing with issues of federal law, including handling frequent patent infringement cases. Thus, this factor is neutral.

> d. *The Avoidance Of Unnecessary Problems Of Conflict Of Laws Or Application Of Foreign Law*

Federal patent law applies to this infringement action. There is no apparent conflict of law issues, so this factor is similarly neutral.

## **CONCLUSION**

Based on the foregoing, Lely requests dismissal of the Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), or in the alternative, Lely requests transfer to the Southern District of Iowa.

Dated:  April 12, 2011                    Respectfully submitted,

*/s/ Michael C. Smith*
Michael Charles Smith
Texas Bar No. 18650410
Siebman Burg Phillips & Smith, LLP-Marshall
P O Box 1556
Marshall, TX 75671-1556
903-938-8900
Fax: 19727674620
Email: michaelsmith@siebman.com

ATTORNEYS FOR LELY HOLDING S.A.R.L.
AND LELY INDUSTRIES N.V.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this the 12th day of April, 2011.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

*/s/ Michael C. Smith*
Michael C. Smith